647 F.2d 411
 UNITED STATES of America, Appellee,
v.
Wayne McNair HARGROVE, Appellant.
UNITED STATES of America, Appellee,
v.
William Barry ROBINSON, Appellant.
UNITED STATES of America, Appellee,
v.
Michael F. TILLERY, Appellant.
UNITED STATES of America, Appellee,
v.
Paulette ASHTON, Appellant.
UNITED STATES of America, Appellee,
v.
Teresa STARR, Appellant.
 Nos. 79-5206, 79-5208, 79-5209, 79-5215 and 79-5216.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 4, 1980.
Decided April 22, 1981.
 
 Stewart C. Economou, Alexandria, Va. (Evans, Economou & Pickard, Alexandria, Va., on brief), Thomas J. Bepko, Jr., Alexandria, Va., Fern Flanagan, Washington, D.C. (John A. Shorter, Mitchell, Shorter & Gartrell, Washington, D.C., on brief), Robert W. Mance (R. Kenneth Mundy, R. Kenneth Mundy & Associates, P.C., Washington, D.C., on brief), Christopher Hopkins, Fairfax, Va. (Hall, Surovell, Jackson & Colten, P.C., Fairfax, Va., on brief), for appellants.
 Leonie M. Brinkema, Asst. U. S. Atty., Alexandria, Va. (Justin W. Williams, U. S. Atty., Alexandria, Va., on brief), for appellee.
 Before BUTZNER, RUSSELL and HALL, Circuit Judges.
 BUTZNER, Circuit Judge:
 
 
 1
 Wayne McNair Hargrove, Michael Tillery, William Robinson, Paulette Ashton, and Maria Teresa Starr appeal, on a variety of grounds, their convictions for violations of federal laws prohibiting possession and distribution of cocaine. We affirm.
 
 
 2
 * The principal issue presented by this appeal is whether Hargrove has standing to suppress evidence seized from an automobile that he was driving. Hargrove, for whom an arrest warrant had been issued, was stopped by police after a brief chase. The officers removed him from the automobile and placed him under arrest. After Hargrove was handcuffed, one of the officers found behind the front seat a paper bag that contained three plastic sacks of cocaine.
 
 
 3
 During the suppression hearing the government introduced evidence that a subsequent check of the car's license plates revealed that the car had been reported stolen in Michigan. Examination by a government's witness disclosed that the vehicle identification numbers had been changed. Hargrove presented no evidence to rebut this testimony, nor did he claim that he owned the bag containing the cocaine. Without ruling on the government's objection to Hargrove's standing to suppress the evidence, the court summarily ruled that the search was valid and admitted evidence of the seizure of the cocaine.
 
 
 4
 We find no error in admission of this evidence, but we base our conclusion on Hargrove's lack of standing to contest the search. In United States v. Salvucci, -- U.S. --, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), the Court held that to establish standing for asserting a violation of the fourth amendment, a person must show a "legitimate expectation of privacy in the area searched." 100 S.Ct. at 2553. Although Salvucci was decided after Hargrove's case was tried, the Supreme Court had previously discussed the application of this principle to persons present in stolen automobiles. In Rakas v. Illinois, 439 U.S. 128, 141 n.9, 99 S.Ct. 421, 429 n.9, 58 L.Ed.2d 387 (1978), the Court criticized two decisions that "inexplicably have held that a person present in a stolen automobile at the time of a search may object to the lawfulness of the search of the automobile."
 
 
 5
 Arguably, the evidence of the stolen car report and the alteration of the identification numbers would have been insufficient to convict Hargrove of possession of a stolen vehicle. Nevertheless, in view of his burden to establish standing to contest the search at the suppression hearing, it sufficed at the very least to require him to show, if he could, that he acquired the car innocently. This he failed to do.
 
 
 6
 We therefore hold that Hargrove did not have a legitimate expectation of privacy in the car he was driving and that he lacked standing to object to a search of the vehicle. Cf. United States v. Sanchez, 635 F.2d 47, 63-64 (2d Cir. 1980); United States v. Reyes, 595 F.2d 275, 278-79 (5th Cir. 1979); United States v. Pitts, 588 F.2d 102, 103 (5th Cir. 1979); Amezquita v. Hernandez-Colon, 518 F.2d 8, 11-12 (1st Cir. 1975).
 
 
 7
 Furthermore, we conclude that Hargrove had no legitimate expectation of privacy in the paper bag found behind the front seat of the car. One who can assert no legitimate claim to the car he was driving cannot reasonably assert an expectation of privacy in a bag found in that automobile. Whether a person has an expectation of privacy in a container that is searched is not determined by his subjective beliefs. His expectation must be objectively reasonable. A person who cannot assert a legitimate claim to a vehicle cannot reasonably expect that the vehicle is a private repository for his personal effects, whether or not they are enclosed in some sort of a container, such as a paper bag. See Rakas, 439 U.S. at 151-52, 99 S.Ct. at 423-24 (Powell, J., concurring); cf. United States v. Smith, 621 F.2d 483, 486-88 (2d Cir. 1980). Consequently, Hargrove lacked standing to challenge the search of the bag and the seizure of the cocaine it contained.
 
 
 8
 The appellant's reliance on Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), is misplaced. Although Sanders dealt with the need for a warrant to search luggage removed from a taxi, the standing of the defendants to contest the search was not in question. 442 U.S. at 761 n.8, 99 S.Ct. at 2592.
 
 II
 
 9
 The other assignments of error merit only brief comment.
 
 
 10
 The appellants complain that during the voir dire of the jury the trial court erred in not asking specific questions they proffered. In their brief the appellants do not point to the omission of any specific proffered question that is essential for an adequate voir dire. Instead, they insist that they were denied an impartial jury because the court did not ask the questions they proposed. We find no error in the court's rejection of the proposed questions since its own examination of the jury was adequate. Indeed, in response to the court's questions, five jurors said that their views about narcotics would prejudice them, and they were excused. See generally United States v. Giese, 597 F.2d 1170, 1182-83 (9th Cir. 1979).
 
 III
 
 11
 The appellants argue that the trial court erred in refusing to question the jury to determine whether any had read a newspaper article concerning the case. The day the paper carried the article, defense counsel told the court they had seen one of the jurors carrying a copy. Counsel described the article as "very inaccurate and highly prejudicial" but did not specify in what respect it was prejudicial or tender it to the court. The court declined to question the jury, and the appellants did not move for a mistrial or new trial because of this incident.
 
 
 12
 Because the appellants never tendered the article to the court, they have not established an evidentiary basis for a new trial on this ground. See United States v. Hankish, 502 F.2d 71, 77-78 (4th Cir. 1974) (dictum).
 
 IV
 
 13
 Ashton contends that federal officers and local police violated 18 U.S.C. § 3109 by failing to knock and announce themselves before they entered her apartment when they executed a search warrant. Ashton and another witness, who were inside the apartment at the time of the search, testified they did not hear the officers knock or announce themselves. Several of the officers involved in the search and the manager of the apartment building, who accompanied the police, testified that the officers did knock and announce themselves. The trial court resolved this conflict in favor of the government. Its determination of credibility cannot be overturned.
 
 V
 
 14
 Starr asserts that she was denied her rights to due process, to confront witnesses, and to effective assistance of counsel because the trial court denied her motion for the disclosure of an informant's identity and address. The informant introduced a detective to Starr, and he saw Starr sell cocaine to the officer. Although Starr could not foretell what the informant's testimony would be, she contended that he might have established an entrapment defense by contradicting the detective's testimony. The government alleges that the informant was a citizen concerned about drug traffic who was not paid for his information.
 
 
 15
 Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), requires the government to disclose an informant's identity when disclosure would be helpful to the defense or essential to a fair trial. The Supreme Court explained that no fixed rule regarding disclosure is possible: "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors." 353 U.S. at 62, 77 S.Ct. at 628.
 
 
 16
 Starr knew the informant's identity. She had in fact worked with him. His presence was not necessary to a fair trial because the evidence, including the testimony of one of Starr's witnesses, precluded any entrapment defense. Applying the principles set forth in Roviaro, we conclude that the trial court did not err in denying her motion.
 
 
 17
 Starr also contends that the trial court should have granted her motion for a new trial on the ground that the government had improperly suppressed evidence by concealing the informant. Although the court denied Starr's motion for disclosure of the informant's name and address, it directed the government to have him available for the trial. The informant, however, fearing for his safety, had moved away from his apartment. His contact, a drug enforcement agent, did not know where the informant was staying, and the government did not have him present at the trial.
 
 
 18
 During the trial, Starr requested a subpoena for the informant. That evening the informant called the agent at the agent's home to inquire about a marshal's appearance at his parents' house. The agent told the informant that a subpoena for him had been issued. The next day the marshal reported that he had been unable to serve the subpoena. Later that day, the informant came to the United States Attorney's office, but counsel had already begun summation. The government's trial attorney was not notified of the informant's presence.
 
 
 19
 Although the government must make a reasonable effort to secure an informant's presence at trial, it is not required to guarantee that he will appear. United States v. Leon, 487 F.2d 389, 392 (9th Cir. 1973). Here the government made a reasonable effort to obtain the informant, and the trial court properly held that it was not guilty of any concealment.
 
 VI
 
 20
 Robinson, complaining that he was prejudiced by a joint trial, assigns error to the district court's denial of a severance at the conclusion of the government's case. He based his motion on the fact that there was less evidence against him than against his co-defendants.
 
 
 21
 Robinson was charged with conspiracy and two substantive counts that were also alleged as overt acts of the conspiracy. Therefore, joinder was proper. Fed.R.Crim.P. 8(b). Although his co-defendants appear to have been more deeply involved in the crime, the evidence against Robinson was sufficient to establish his guilt on all three of the counts pertaining to him. The record does not indicate that he was convicted simply by innuendo because his associates were plainly guilty. Accordingly, Robinson was not entitled to a severance. United States v. McGruder, 514 F.2d 1288, 1289 (5th Cir. 1979). The trial court did not abuse its discretion by denying Robinson's motion. See Cataneo v. United States, 167 F.2d 820, 823 (4th Cir. 1948).
 
 
 22
 AFFIRMED.